THOMPSON v. JUDY, Bourbon County Jailer.

(Circuit Court of Appeals, Sixth Circuit. April 19, 1909.)

No. 1,891.

BANKRUPTCY (§ 424*)—DISCHARGE—"LIABILITIES" DISCHARGED.

The change made in Bankr. Act July 1, 1898, c. 541, § 17a(2), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), which as originally enacted provided that a discharge should release a bankrupt from all of his provable debts except such as "are judgments in actions * * * for willful and malicious injuries to the person or property of another," and which was amended Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026), by substituting for the words "judgments in actions" the word "liabilities," did not have the effect of removing judgments for such causes from the excepted class, but of including such liability, whether judgment has been rendered upon it or not.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 424.*

For other definitions, see Words and Phrases, vol. 5, pp. 4111–4116.]

Appeal from the Circuit Court of the United States for the Eastern District of Kentucky.

H. Myers and E. Dickson, for appellant.

A. C. Cassatt, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and TAYLER, District Judge.

SEVERENS, Circuit Judge. On March 30, 1907, J. D. McClintock obtained a judgment in the circuit court of Bourbon county, Ky., against Wyatt A. Thompson for $1,500, damages for a false and malicious libel published in a newspaper by the defendant and others in April, 1906. On June 24, 1907, Thompson filed his voluntary petition in bankruptcy in the United States District Court for the Eastern District of Kentucky, and listed the said claim of J. D. McClintock as one of his liabilities. McClintock afterwards proved his claim in the case. On October 8, 1907, Thompson received his discharge in bankruptcy. On October 14, 1907, a writ of capias ad satisfaciendum was issued from the Bourbon circuit court, and was executed

on October 22, 1907, by the arrest of said Thompson, who was delivered into the custody of George W. Judy, jailer of Bourbon county. On October 23, 1907, Thompson filed his petition in the United States Circuit Court for the Eastern District of Kentucky for a writ of habeas corpus on the ground that the indebtedness upon which the capias was issued, namely, the judgment for damages for libel, had been discharged in bankruptcy. The writ was issued against Judy, the jailer of Bourbon county, and the petitioner was admitted to bail. Thereafter Judy filed his response, setting forth the proceedings in the circuit court of Bourbon county, and on final hearing Judge Cochran, who was presiding in the court below, held that the judgment in question was not discharged by proceedings in bankruptcy, and ordered that the petition for habeas corpus be dismissed and the petitioner be remanded to the state custody. From that order this appeal is taken.

The sole question in the case is whether the proceedings in bankruptcy operated to discharge the liability of the petitioner, which was the foundation of the judgment of the Bourbon circuit court, and the solution of it depends upon the construction of section 17 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), which is as follows:

"Sec. 17. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied by the United States, the state, county, district, or municipality in which he resides; (2) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another; (or for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for criminal conversation); (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

The foregoing is section 17 of the act as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026). That part of clause 2 which excepts from the operation of the discharge "liabilities" for willful and malicious injuries to the person or property of another is the provision here involved. That clause in the original act was the same, except that instead of the word "liabilities" the word "judgments" was employed. And the matter in dispute is, What was the consequence of the amendment which substituted "liabilities" for "judgments"?

Before the amendment, a liability for such a cause was not excepted unless it had been reduced to judgment. By the amendment it is excepted without being reduced to judgment. The contention of the appellant is that when a judgment has been obtained the liability is merged therein, and the claim no longer adheres to the liability, but is transmuted into another species of right, which was excepted by the original act, but, since the amendment, is no longer excepted. But notwithstanding the ingenuity of the argument by which this contention is sought to be maintained, we are of opinion that the intention of Congress was to declare that such liability should be excepted whether a judgment had been rendered upon it or not. The general doctrine of

merger of the cause of action by judgment cannot, of course, be disputed. No suit or proceeding can thereafter be brought upon the original liability, but only for the enforcement of the judgment. The power of the court cannot be again invoked to adjudicate the question of liability. It is for the interest of the public that litigation shall come to an end, and the inconvenience of preserving the original liability as a continuing cause of action would be great. The pursuit must proceed along the line adopted, and the satisfaction of the claim must be sought through the judgment. But this rule of law prevails only to the extent that the reason for it exists. It does not prevent the recognition in the judgment of the attributes of the original cause of action. For the purposes of relief, the judgment embodies those attributes and gives ground for their enforcement. The rights of the parties are established, and are in no wise diminished thereby. So, when the judgment is general in form, it is often necessary to go behind it and see upon what liability it is founded, to the end that the characteristics of the cause of action may be impressed upon it. Such instances will recur to the mind of every lawyer. Indeed, Congress required this in this identical act when it excepted judgments for the particular causes of action mentioned in clause 2 of section 17. Now, we cannot resist the impression that Congress in making this amendment was looking to the substantial nature of the liability, and regarded the question as to whether a judgment had been rendered upon it as immaterial, that its intrinsic nature had not been altered and was in reality the cause of action intended by the original exception, and that Congress meant to protect that from the discharge. Apparently the requirement in the original act that the claim should have been reduced to judgment was intended to obviate the delay which a proceeding in the bankruptcy court for the liquidation of the damages would involve. And, finally, it would seem that in plain English a judgment on such a cause of action is a "liability" therefor.

But the appellant raises another question, which is whether a willful and malicious libel is an injury "to the person or property of another," and argues that by this language is meant a physical injury to his person, and not merely an injury to a right which the law attaches to the person. The question is therefore one of construction. It is true that in modern parlance the words "personal injury" are often used to designate a physical injury to the party. But usually, when there is any attempt to put the matter into legal phraseology, these and equivalent words are understood to import the meaning in which they have long been used by recognized authorities, whether in legal text-books and commentaries or precise definition by courts, in classifying the rights of individuals. In 1 Blackstone's Com. 129 et seq., the author classifies and distinguishes those rights which are annexed to the person, jura personarum, and acquired rights in external objects, jura rerum; and in the former he includes personal security, which consists "in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation." And he makes the corresponding classification of remedies. The idea expressed is that a man's reputation is a part of himself, as his body and his limbs

are, and that detraction of it is an injury to his personality, and Chancellor Kent in his twenty-fourth lecture shows that the same classification of rights was expressed in our colonial legislation and has always been observed, and on page *16 of the second volume of his Commentaries, he says:

"As a part of the rights of personal security, the preservation of every person's good name from the vile arts of detraction is justly included. The laws of the ancients, no less than those of modern nations, made private reputation one of the objects of their protection."

The reasonable presumption is that Congress, being engaged in framing a statute so much requiring precision of terms, expected its language to be interpreted by long-settled 'usage in legal nomenclature. We shall not particularly refer to the many decisions of courts where this subject has been considered, but will limit our references to cases where this particular language of the bankruptcy act and its construction were involved. McDonald v. Brown, 23 R. I. 546, 51 Atl. 213, 58 L. R. A. 768, 91 Am. St. Rep. 659; Sanderson v. Hunt, 116 Ky. 435, 76 S. W. 179; McChristal v. Clisbee, 190 Mass. 120, 76 N. E. 511, 3 L. R. A. (N. S.) 702.

We are not aware of any decision of the federal courts upon this precise question, but there are several which seem to point to the conclusion that the injuries contemplated in section 17 of the bankrupt act are not restricted to those which are inflicted upon the physical person of the party, but extend to those inherent rights of the person, which stand in the same class as his right to security from violence done to his body. Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754; In re Freche (D. C.) 109 Fed. 620; In re Maples (D. C.) 105 Fed. 919. And see Leicester v. Hoadley, 66 Kan. 172, 71 Pac. 318, 65 L. R. A. 523.

The order of the Circuit Court must be affirmed, with costs.

NOTE.—The following is the opinion of Cochran, District Judge, in the court below:

COCHRAN, District Judge. These several proceedings are to secure the release of the petitioners from state custody under judgment against them respectively for libel. The grounds upon which their release is sought is that said judgments have been discharged by proceedings in bankruptcy instituted by them, respectively. The question depends upon whether said judgments can be said to be for a willful and malicious injury to the person of the plaintiff therein, within the meaning of section 17 (2) of the bankrupt act. Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428). It has been expressly held that such a judgment is not within said section as it stood prior to the amendment of 1903 (Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 [U. S. Comp. St. Supp. 1907, p. 1026]) in the cases of McDonald v. Brown, 23 R. I. 546, 51 Atl. 213, 58 L. R. A. 768, 91 Am. St. Rep. 659, and Sanderson v. Hunt, 116 Ky. 435, 76 S. W. 179.

The reasoning of these cases seems sound to me. It is argued, however, that they are erroneous, because elementary writers generally, in classifying wrongs, do not include injuries to the reputation in that to the person, but make a separate class of them. But the meaning of the words "injuries to the person," as used in the bankrupt act, must be taken as gathered from those words as there used, and not as used in elementary writers. Their meaning as there used is affected by the spirit and purpose of the bankrupt act. In the case of McDonald v. Brown, supra, Judge Tillinghast referred to this spirit and purpose in these words: "The policy of the bankrupt law is not to relieve

an insolvent debtor from liabilities arising out of his fraud or other wrong-doing, but to relieve him from his debts and obligations which were honestly contracted and incurred, but which, because of misfortune of some sort, he has become unable to meet. To hold otherwise, as it seems to us, would be to make the law an instrument of wrong and oppression." However, the learned judges who delivered the opinions in these cases undertake to show that an injury to the reputation is an injury to the person within the meaning of certain elementary writers. In the case of McChristal v. Clisbee, 190 Mass. 120, 76 N. E. 511, 3 L. R. A. (N. S.) 702, it was held that a malicious prosecution was an injury to the person, and therefore that a judgment therefor may not be released by a discharge in bankruptcy.

But it is claimed that the matter is affected by the amendment of 1903 in expressly excepting liabilities for seduction of unmarried females or for criminal conversation, which before the amendment were held to be within the exception under the words "injuries to the person." Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754. The argument is that, because Congress saw fit to expressly except certain injuries to the person, it intended that such injuries to the person as we have here should not be within the exception. We fail to see how such an intent can be worked out. All that the express mention of said injuries to the person reveals as to the intent of Congress is that it thought proper that such injuries should be expressly excepted. In so far the amendment declared the law as it existed without the amendment. This it did also as to liabilities for alimony. Wetmore v. Markoe, 196 U. S. 68, 25 Sup. Ct. 172, 49 L. Ed. 390. As to the purpose of expressly excepting such liabilities Mr. Justice Day in that case said: "The amendment may also have been passed with a view to settling the law upon this subject, and to put at rest the controversies which had arisen from the conflicting decisions of the courts, both state and federal, upon this question. Indeed, in view of the construction of the act by the court in Audubon v. Shufeldt, 181 U. S. 575, 21 Sup. Ct. 735, 45 L. Ed. 1009, supra, it may be said to be merely declaratory of the true meaning and sense of the statute." So as to liabilities for seduction and criminal conversation the statute may be said to be declaratory that they are within the true meaning and sense of the statute; and this is the sole effect that can be given to their express mention. The exception is as broad as it ever was.

An order shall be entered dismissing the suits and remanding the petitioners to the state custody.