In re DE LAURO.

No. 12958.

District Court, D. Connecticut.
May 2, 1932.

Israel J. Jacobs, of New Haven, Conn., for petitioner De Lauro.

Edwin G. Hayes, of New Haven, Conn., for John McClellan.

HINCKS, District Judge.

This court heretofore, on application of the bankrupt herein, wherein it was alleged that, prior to his adjudication in bankruptcy, one McClellan had obtained a judgment against him in the city court of New Haven "upon a claim of assault not founded upon a willful or malicious assault, from which judgment a discharge in bankruptcy would be a release," granted a temporary stay of said proceedings in the city court.

The matter now comes before the court upon an order to said McClellan to show cause why the stay thus issued should not be continued for twelve months from the date of adjudication, or until the bankrupt obtains a discharge.

Upon the hearing of the show cause order, the bankrupt introduced in evidence the file of the city court of New Haven which disclosed that the said McClellan had there filed a complaint wherein it was alleged that the defendant (i. e., the bankrupt herein) "assaulted the plaintiff, severely injuring him," and in this complaint "the plaintiff claims $1,000 damages." The judgment file and the memorandum of decision, upon which it was predicated, show merely that the plaintiff has sustained damages "as alleged in his complaint." The bankrupt offered no further evidence.

The judgment creditor, however, without objection, offered certain testimony as to the circumstances of the assault in question tending to show that the assault in fact was willful and malicious.

On these facts, the question is as to the effect of section 17 of the Bankruptcy Act (11 USCA § 35), which provides that a discharge shall release a bankrupt from all of his provable debts, except such as are "liabilities * * * for willful and malicious injuries to the person or property of another." Is the "provable debt" in this case (i. e., the judgment) a liability for willful and malicious injury, within the meaning of section 17?

It is apparent that Congress, in excepting from the effect of a discharge provable debts (including judgments) which are "liabilities for willful and malicious injuries," has made a wholly inartificial classification of torts. An action on the case, for example, perhaps the broadest form of remedy, includes both an action for malicious prosecution in which it would appear that willful and malicious intent was an indispensable element, In re Stone (D. C.) 278 F. 566; also actions for ordinary negligence which are complete without the presence of that element, In re Longdo (D. C.) 45 F.(2d) 246. And trover, the classic form of remedy for a wrongful conversion, may or may not include the element of willful and malicious wrongdoing. Thus, in the case of McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. Ed. 205, it was held that the conversion there under consideration was in fact willful and malicious, and hence nondischargeable in bankruptcy. Yet conversion may occur without the presence of that element, and in such cases is a liability dischargeable in bankruptcy. Swift & Co. v. Bullard & Son (D. C.) 3 F.(2d) 814. And in the case of Tinker v. Colwell, 193 U. S. 473, 24 S. Ct. 505, 510, 48 L. Ed. 754, the court said: "One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious."

It is thus apparent that certain torts may exist both with and without the presence of willful and malicious intention.

■■■ The question here is whether the tort of assault necessarily imports the presence of willful and malicious wrong. In the case of Peters v. U. S. ex rel. Kelley (C. C. A.) 177 F. 885, 888, it was held by divided court that it did. Indeed, the court went so far as to say that: "By the law of Illinois (as generally elsewhere) a judgment for damages under a count for trespass vi et armis cannot lawfully be rendered except upon proof of a willful and malicious injury." But the law of Connecticut must control my decision, and in the case of Lentine v. McAvoy, 105 Conn. 528, 530, 136 A. 76, 77, which was an action for a wanton and malicious battery, the court said: "The request that if the jury found that the defendant did not intend to strike or injure the plaintiff when he swung his club he could not recover, was in conflict with our rule that an unintentional trespass to the person, or assault and battery, if it be the direct and immediate consequence of a force exerted by the defendant wantonly, or imposed without the exercise by him of due care, would make him liable for resulting injury. Welch v. Durand, 36 Conn. 182, 185, 4 Am. Rep. 55."

The opinion also indicates that exemplary damages may be assessed for "willful and malicious assault and battery." Indeed, that proposition, within recognized limits, is well established in the law of this state. Keane v. Main, 83 Conn. 200, 203, 76 A. 269; Hanna v. Sweeney, 78 Conn. 492, 62 A. 785, 4 L. R. A. (N. S.) 907; Maisenbacker v. Society Concordia, 71 Conn. 369, 42 A. 67, 71 Am. St. Rep. 213.

■ But the very existence of the doctrine of exemplary damages in cases of malicious injury imports that an assault may occur without the presence of that element. It results that, under the law of Connecticut, a general judgment or verdict does not necessarily import willful and malicious injury, even though the complaint alleges a willful and malicious assault. For the verdict would be supported by a finding of simple assault only, and the allegation of malice might be treated as surplusage.

Since, then, the record of the city court fails to disclose an adjudication of willful and malicious injury, the question arises whether I should consider evidence introduced by the respondent (i. e., the judgment creditor) without objection from the petitioner, tending to show that the assault was in fact malicious.

■■■ The stay which is sought must be authorized either by section 11 or section 9 of the Bankruptcy Act. But it will be observed that section 11 (11 USCA §. 29) expressly limits the life of a stay until "twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined." Section 9 (11 USCA § 27), on the other hand, exempts the bankrupt from arrest upon civil process upon claims dischargeable in bankruptcy, but the section is construed to extend such exemption only until action is had upon the bankrupt's application for discharge. It is apparent that both sections are designed to preserve the status quo in civil actions against a bankrupt until he shall have an opportunity of pleading his discharge in actions against him which have not yet proceeded to judgment, or of using his discharge in habeas corpus proceedings, or otherwise, if arrested in execution of judgments theretofore obtained. The discharge once obtained, and thus employed by the bankrupt, will squarely raise the issue whether or not the action in suit, or the judgment in execution, is a "liability" dischargeable in bankruptcy or not.

Indeed, it is only where the issue is thus raised after a discharge in bankruptcy that a final adjudication upon the effect of the discharge can be obtained. In re Lockwood (D. C.) 240 F. 161. In such proceedings, whether in a state court or in the bankruptcy court, I apprehend that an existing judgment will control if it discloses an adjudication for a "liability for willful and malicious injury." Such was the situation in McIntyre v. Kavanaugh, supra, and in Tinker v. Colwell, supra. But in such proceedings after the discharge in bankruptcy it is only when no prior judgment exists disclosing an adjudication upon that precise issue that the court will try that issue on the merits. See Thompson v. Judy (C. C. A.) 169 F. 553.

■ Under the act, the court is empowered to determine whether the claim in question is a provable debt or not. And, of course, the court has exclusive power to grant a discharge. But nothing in the act contemplates that the bankruptcy court is given exclusive jurisdiction to pass upon the effect of a discharge. Obviously, a determination of the question is not essential to administration in bankruptcy, and it is not until the question

arises in collateral proceedings that the need for its determination occurs.

It results that, in so far as the court of bankruptcy is required to look into the question of dischargeability of a given claim, under the provisions of sections 9 and 11 of the act, it is for purposes only incidental to the administration of the act. In any event, any determination of the question made by this court as an incident to administration is not binding upon the parties in independent proceedings arising in the state courts, after the administration of bankruptcy has been concluded. And, since the question of the dischargeability of a claim depends upon the nature of the claim, which, in turn, depends upon the applicable law of the state, it would be expecting altogether too much of the doctrine of comity to expect the state court to swallow a prior decision of a court of bankruptcy on such a question.

These reflections make it apparent that the ruling in the pending matter will not finally determine the dischargeability of the judgment in question thus affecting the ultimate rights of the parties. Consequently, for present purposes, there devolves upon this court no duty to try the ultimate issue on the merits. If the judgment file had disclosed an adjudication of this precise issue, my decision would be controlled thereby. Such, I take it, was the situation in In re Metz (C. C. A.) 6 F.(2d) 962, 963. Since, however, no such adjudication appears, it is not incumbent on this court to try the issue on the merits, and the mandatory provisions of section 11 of the act must be applied. This section provides, in substance, that a dischargeable claim "shall be stayed." Section 63a (1), 11 USCA § 103 (a) (1), provides that all judgments are provable debts; and section 17 (11 USCA § 35) provides that all provable debts are dischargeable "except such as * * * are liabilities for * * * willful and malicious injuries." Thus the presumption is that a judgment is dischargeable unless, when read with the record behind it without the aid of extraneous evidence it is shown to be one necessarily included within the exception to the general rule. In re Levitan (D. C.) 224 F. 241.

Since here the judgment does not necessarily fall within the exception, the stay must be continued for the statutory term. If the bankrupt succeeds in obtaining a discharge in bankruptcy, the parties can then take appropriate proceedings to determine the effect of the discharge.

The stay may be continued accordingly.