### In re DEVEREAUX.

### DEVEREAUX v. BELSEY.

#### No. 22332.

District Court, E. D. New York.
July 23, 1934.

Joseph G. M. Browne, of Brooklyn, N. Y., for petitioner.

Edward Freedman, of New York City, for respondent.

INCH, District Judge.

The petitioner, Alfred E. Devereaux, has been duly adjudicated a voluntary bankrupt and has been duly discharged. In his schedules duly filed he set forth a judgment recovered against him in the state court, in the sum of $500, representing damages for a false imprisonment, awarded to the judgment creditor Harry T. Belsey.

The bankrupt now files this petition, in his bankruptcy proceeding, in which he asks that said judgment creditor Belsey be enjoined and restrained from enforcing or attempting to enforce the said judgment for damages for false imprisonment because of said discharge.

The judgment was entered after a trial in the state court, a jury having been duly waived and the court allowed to determine the matter with the same force and effect as a verdict. Findings of fact and conclusions of law were also duly waived, in accordance with state court procedure.

Belsey had sued Devereaux on two causes of action. The first alleged a false imprisonment. The second alleged a malicious prosecution. The trial court, in a short memorandum decision, awarded Belsey $500, on the cause of action for false imprisonment, and 6 cents on the cause of action for malicious prosecution.

The bankrupt does not make this motion in connection with the judgment for malicious prosecution. He does claim that the judgment for false imprisonment is barred.

■ The first question would seem to be whether this court should depart from the usual procedure in this circuit and entertain this petition of the bankrupt. The customary procedure, where a bankrupt seeks to avail himself of a discharge from a judgment recovered in the state court, is for him to go into the court where the judgment was obtained and there interpose this alleged bar. In re Scheffler (C. C. A.) 68 F.(2d) 902; In re Havens (C. C. A.) 272 F. 975; In re Madden (D. C.) 257 F. 581.

This procedure was followed by the bankrupt pursuant to section 150, article 6, of the Debtor and Creditor Law of the State of New York (Laws 1909, c. 17, Consol. Laws, c. 12, McKinney's Consolidated Laws of New York, Ann.).

The bankrupt applied on affidavit and proof of his discharge to the Supreme Court of the State of New York asking that the judgment for false imprisonment be canceled and discharged by record. That court has denied the application. 150 Misc. 337, 269 N. Y. S. 127. Thereupon the bankrupt appealed to the Appellate Division of the Supreme Court, and the order below was affirmed, without opinion, 242 App. Div. 603, 271 N. Y. S. 1018.

In view of the nature of the motion in the state court, the bankrupt by his appeal exhausted his right of appeal and could go no further except by special leave granted by the appellate courts which leave is rarely given.

Accordingly, I think it may be fairly said that the bankrupt has exhausted his remedies in the state court. This being so, he now applies to this court.

■ The adjudication and order of discharge of this bankrupt were decrees in equity, determining the status, and jurisdiction remained in this court to determine the effect of the adjudication and order and enjoin the judgment creditor from his threatened interference therewith. Local Loan Co. v. Hunt, 54 S. Ct. 695, 698, 78 L. Ed. 1230, decided April 30, 1934.

However, Mr. Justice Sutherland, delivering the opinion of the Supreme Court in the above case, made it plain that: "It does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under unusual circumstances such as here exist." This plain warning and admonition shows that the Supreme Court did not intend thereby to open the door of the bankruptcy court to every disappointed litigant in the state court, but, on the contrary, suggested that the said customary procedure be followed and only in exceptional cases should this court exercise its authority.

In the Local Loan Case the exceptional circumstances were made apparent, the amount involved was small, although the result was important to bankrupt. That owing to a predetermination by the courts of the state, and a statute of the state, the bankrupt would be put to a long and expensive course of unsuccessful litigation making his state remedies entirely inadequate.

■ It seems to me that a situation exists here of an exceptional character although not exactly similar to those in the Local Loan Case. Here the amount involved is small, but the judgment carries possibilities of arrest and imprisonment. The bankrupt has exhausted his remedies in the state court and will be exposed to the dangers of nonpayment of this judgment unless this court entertains

his petition and affords such relief as he may be entitled to.

Therefore I conclude that this is a proceeding in which this court can properly exercise its authority, provided the proof justifies such exercise. I shall proceed to consider the merits.

■ If this was a question of a proposed stay prior to discharge, the procedure in this circuit is to confine the investigation to the pleadings and judgment. In re Adler (C. C. A.) 152 F. 422; In re Harber (C. C. A.) 9 F.(2d) 551. But the petition here relates to the effect of the discharge and there are decisions which state that: "In determining whether a judgment is dischargeable in bankruptcy, the District Court may consult the record of the trial court." In re Kubiniec (D. C.) 2 F. Supp. 632; In re Burchfield (D. C.) 31 F.(2d) 118; In re Dutkiewicz (D. C.) 27 F.(2d) 334. Also the law of the state in which the judgment was rendered indicates a "hearing." Section 150, Debtor and Creditor Law. See, also, In re De Lauro (D. C.) 1 F. Supp. 678; In re Levitan (D. C.) 224 F. 241; Remington on Bankruptcy (4th Ed.) vol. 7, § 3553.

In view of this, and as I find nothing inconsistent in the procedure of the federal court, I shall consider the record presented.

The basic facts, about which there appears to be no dispute, are as follows: Devereaux before his bankruptcy was in the business of selling stereopticons and similar merchandise. One afternoon his stereopticon was stolen from his automobile. He notified the police. A couple of days afterwards Belsey came to Devereaux's place of business and talked to the young girl clerk in charge in regard to a stereopticon which he said he had. Upon Devereaux's return to his office the young lady told him about this visit and Devereaux notified the police. The following morning two detectives and Devereaux went to the address which, according to Belsey, he had given, and found in his possession the stolen stereopticon. He was informed that it was stolen but refused to give it up either to the police or Devereaux unless he got a receipt. He did not claim to own it, but stated that he had advanced a sum of money to another man who had brought it into the small restaurant or cafeteria, where he was all-night manager, and that he had accepted this stereopticon as security. Upon his refusal to give up this stereopticon he was arrested. The value of the stereopticon was over $50. He was taken to the station house and later held by the magistrate, on a complaint, signed by Devereaux, charging Belsey with "aiding and abetting," and pending a hearing. This hearing was not held, but on the contrary the stereopticon was returned to Devereaux and the charges dismissed. In all these proceedings Belsey was represented by an attorney Joseph A. Esquirol.

Thereafter Belsey sued Devereaux for false imprisonment and malicious prosecution. The trial Justice found Devereaux guilty of false imprisonment and assessed the damages at $500. He also found Devereaux guilty of malicious prosecution and assessed the damages at 6 cents. Judgment was duly entered.

■ Assuming, as we must, that the trial court properly found a judgment for false imprisonment, the judgment creditor now claims that the subsequent discharge in bankruptcy of Devereaux did not bar it for the reason that the judgment was for "a wilful and malicious injury." An examination of the judgment indicates no such thing. The court cannot speculate on the intention of the trial justice.

The complaint of Belsey alleged that Devereaux "maliciously arrested or caused the plaintiff (Belsey) to be arrested against his will for such felony."

■ In the charge of false imprisonment the use of this word "maliciously" is surplusage so far as essential to the alleged cause of action. Marks v. Townsend, 97 N. Y. 590–597. It may be regarded as redundant. Henry Hall, etc., v. Sundstrom, etc., 138 App. Div. 548, 123 N. Y. S. 390, affirmed 204 N. Y. 660, 97 N. E. 1106; Johnston v. Bruckheimer, 133 App. Div. 649, 118 N. Y. S. 189; In re Kneski (D. C.) 290 F. 406.

Therefore, however useful to the cause of action for malicious prosecution, the insertion of the word "maliciously" in the cause of action for false imprisonment had nothing whatever to do with that cause of action. Marks v. Townsend, supra, page 597 of 97 N. Y.

Unless therefore the false imprisonment was in fact a "willful and malicious injury," the bankrupt's discharge ended recovery under the judgment.

■ This discharge of Devereaux was a bar unless the judgment creditor (Belsey) establishes that it was not an ordinary case of false imprisonment but that it was in fact a "willful and malicious" false imprisonment.

The burden of proof was not upon the bankrupt to prove the exception. It was and

is upon Belsey, the judgment creditor. Tompkins v. Williams, 137 App. Div. 521, 122 N. Y. S. 152; Columbia Bank v. Birkett, 174 N. Y. 112, 66 N. E. 652, 102 Am. St. Rep. 478, affirmed 195 U. S. 345, 25 S. Ct. 38, 49 L. Ed. 231; In re De Lauro (D. C.) 1 F. Supp. 678; In re Levitan (D. C.) 224 F. 241, In re Devereaux, 150 Misc. 337, 269 N. Y. S. 127, 128.

The proper decision therefore of this question depends on whether the judgment creditor (Belsey) has sufficiently established that his false imprisonment was "willful and malicious."

The definition of what is "willful and malicious" has been given to this court by the Supreme Court. Tinker v. Colwell, 193 U. S. 473, 24 S. Ct. 505, 48 L. Ed. 754; McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 40, 61 L. Ed. 205.

It does not necessarily mean ill will or special malice, but it must mean a "willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally." McIntyre v. Kavanaugh, supra.

Accordingly, we consider whether the judgment creditor (Belsey) has satisfactorily proved that when he was found in possession of the stolen stereopticon and refused to give it up to the owner or to the police officer the owner acted with a willful disregard of what he must have known was his duty and intentionally caused the injury to Belsey by arresting or having him arrested.

Whatever may be said about the correctness of the judgment, which I must assume to be correct, it is my opinion that the judgment creditor has entirely failed to carry the burden cast upon him.

There is not the slightest proof that the stereopticon had not been stolen and that Devereaux was not the rightful owner. There is no proof whatever that Belsey owned the stereopticon, or had any right to it, except as an alleged security for some one whose address he did not know, and whose full name he did not know, and whom he had not seen since the incident, and who had not returned to redeem the alleged pledge. There is no contradiction that proper police officers were present sufficient to protect all parties involved.

The learned Justice who gave judgment for damages for false imprisonment, in his brief memorandum, which is cited by the Justice of the Supreme Court denying the motion to cancel, seems to have indicated that the basis for his finding of false imprisonment were the unlawful entry by the owner of the stereopticon into Belsey's home without a search warrant. And also implied that the previous visit of Belsey to Devereaux's place of business had been to "voluntarily try to restore stolen property to its rightful owner."

It seems to me that the fact has been entirely overlooked, if Belsey is to be believed, and based only upon his affidavits, that the only reason that the owner of the stereopticon went to Belsey's home was because he had been invited to do so by Belsey leaving his address. Certainly the purpose of this act by Belsey was so that Devereaux could get in touch with him, and if Devereaux chose to call rather than telephone or write, I see no unlawful invasion of Belsey's home. It was what occurred after Devereaux entered Belsey's home that must have been the wrong. The stolen machine was seen as soon as Devereaux called. It cannot be possible that the law required the owner of the machine to then retire from Belsey's home and obtain a search warrant as there was no necessity for a search. Previous to the call, if Belsey is to be believed, there was no ground for a search warrant. Belsey had the machine and did not own it. He only claimed it on the theory of alleged security for a loan to this practically unknown man.

Certainly this is not sufficient on which to base a finding that the false imprisonment, however proper that may have been, was a "willful and malicious act" on the part of Devereaux.

The other reason given, of course, meets with the approval of every one, if Belsey was in fact in good faith, trying to restore the stolen stereopticon to Devereaux.

Unfortunately there is nothing in any of the affidavits submitted by Belsey, or indicated so far as I can see in any way, that Belsey was trying to restore stolen property. On the contrary, several inconsistent reasons have been given by Belsey. One, that he was trying to cash in on his alleged lien; another, that he was seeking his debtor's address; and, still another, "who" owned the machine? If Belsey had voluntarily been trying, in good faith, to restore stolen property, he would have promptly given the machine up to the police, if not to the owner, when they called.

While it is no crime to innocently possess stolen property, it is a crime under the state law to receive stolen property knowing the same to have been stolen or to withhold or

aid in withholding any property knowing the same to have been stolen. Penal Law of New York (Consol. Laws, c. 40) § 1308. The mere fact that the defendant intended to restore the property stolen is no good ground of defense. Section 1307, Penal Law of New York.

There can be no doubt that Belsey, upon Devereaux's visit with the police, knew or had reasonable cause to believe that the machine was stolen property.

Whether or not Belsey knew this stereopticon had been stolen at the time of his alleged loan was a question of fact which was never brought to trial because of the arrangements made in the Magistrate's Court.

"The rule is well established that possession of goods recently stolen creates an inference that such possession is a guilty one, and casts upon the defendant the burden of explaining it to the satisfaction of the jury." People v. Rogan, 223 App. Div. 242, 227 N. Y. S. 658, 659, affirmed without opinion, 249 N. Y. 544, 164 N. E. 577.

There is no pretense that there were any witnesses examined or charge pressed in that court.

Consequently, I am unable to find anything in the record on which to base a finding that this judgment was caused by a "willful and malicious act" on the part of the bankrupt.

Finally, because of the great respect that should be given to the decisions of the state court in this matter it seems necessary for me to comment briefly on what seems to me to be certain inconsistencies appearing in the affidavits of the judgment creditor.

It must be conceded that the stereopticon was stolen.

Belsey submitted a number of affidavits. His explanation of how he obtained possession of this stereopticon would be material. In his affidavit verified June 1, 1934, he said he had loaned $25 to a customer of the restaurant and taken, as security, the stereopticon. That when this customer did not return he went to Devereaux's place of business "to make inquiries regarding it, taking along the serial number, and told the young lady, in the absence of Devereaux, the circumstances under which he had acquired it."

In his affidavit of July 5, 1934, at folio 23, he states: "The reason I went to the Devereaux View Company when Fred did not return was because I believed I could get Fred's address, or whoever else may have been the owner."

While Belsey did not comply with the request of the court, on the return day of the motion, that he put in affidavit form directly the name of this man and other particulars that the court understood counsel to say his client knew, he has sworn not to the fact but that he "told his attorney" certain things, among which was that all he knew of this man was that his name was Fred, that he had formerly worked at the cafeteria, that these workmen "are kept on the books of the cafeteria by their first name," and that he had "endeavored to find out" who had *owned* this stereopticon.

So far I have confined my consideration to the proof of the judgment creditor, and from this it is far from clear that at the time when the owner of the machine appeared Belsey was the innocent man that he would now have us believe. On the contrary, and on the question of whether he knew or had reasonable cause to believe that the stereopticon was stolen, at the time of the loan, a very reasonable argument could be made that he did.

I mention this solely on the question of whether or not he now has shown sufficiently that Devereaux acted "willfully and maliciously" within the definition of the courts already mentioned.

However, if one considers the affidavits of the bankrupt, an even greater reason for believing that the bankrupt neither acted willfully nor maliciously exists.

Some of these affidavits are those of Belsey's former attorney who represented him in the Magistrate's Court. Belsey attacks these affidavits as unethical. The lawyer in question is of excellent standing and occupies an official position as well. He was careful to disclose nothing confidential, but as a member of the bar he rightly conceived that he owed a duty, regardless of his client, to see that unfair and unjust advantage was not thereafter taken of the owner of the machine that had been stolen, based on his successful efforts to keep his client from jail. It was his duty to state what he says he knows to be the facts.

In my opinion, therefore, the judgment creditor has failed to sustain the burden of proof resting upon him to show that this judgment for false imprisonment was willful and malicious and thereby was excepted from the effects of the discharge, which otherwise the law presumed barred the judgment. On the contrary, in my opinion, the credible proof indicates that it was not willful and malicious.

Petition granted.