# Richmond

## BYRD FULLER v. C. B. EDWARDS.

October 12, 1942.

Record No. 2588.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*S. H. & Geo. C. Sutherland*, for the appellant.

*G. Mark French*, for the appellee.

HOLT, J., delivered the opinion of the court.

C. B. Edwards and other officers of Dickenson county, under authority of a warrant, searched the home of Byrd Fuller, who was suspected of having illegal liquor concealed there. While this search was in progress, Fuller grossly abused and slandered Edwards in words not fit to print.

Thereafter, on the 6th day of April, 1939, there was served upon Fuller "a copy of a warrant, to appear at Clintwood on the 14th day of April, 1939, before Gallie Friend, Trial Justice at Dickenson county, Virginia, to answer the complaint of C. B. Edwards in the sum of nine hundred dollars ($900.00), for damages due for insulting words."

That case was not tried upon the appointed day due to some local labor trouble and to the fact that Fuller was not present. It was adjourned over to another named day. This second date Fuller knew about; the evidence is that the trial justice told him. Again he did not appear, and judgment went. This inattention may have been due to the fact that Fuller thought that Edwards' case was without merit. Nat Mullins' (deputy sheriff) testimony sustains this view: "Byrd said he wasn't aiming to pay any attention to it there was nothing to it."

After Fuller's case, set down for trial on the 14th of April, 1939, had been continued, his wife gives us this account of what they did:

"He started that morning to come to Clintwood and got out as far as the gate and he had trouble with his eyes and head for about two weeks and he turned around and come back and sent me to Haysi to 'phone up here at Clintwood to tell them he was sick and could not come to put the trial

off till trial day at Haysi, the answer that he got back from the clerk there at Clintwood that there would be no trial at all that day, that they was all put off."

The situation may be summed up in this wise: A warrant was served upon Fuller, notifying him that his trial was to come up on a certain date. He did not appear. The case was adjourned over to another date, and this he knew. On this second date judgment went, although Fuller was not present.

When a defendant's case is set for trial, [and] if he fails to appear judgment may go against him, or his case may be adjourned over to another day. The burden is on him to keep in touch with a situation made necessary by his absence, and in this case there is evidence that he actually knew of the second designated day.

Fuller's claim that judgment was entered in his absence without any or sufficient notice is without merit.

It is contended in argument that the trial should have been had at Haysi. The trial justice sits there each month. Haysi is in Willis Magisterial District of Dickenson county and is three miles from the Fuller home, also in that district. Clintwood is the county seat of Dickenson county and is 23 miles from the Fuller home. By Act of 1936, Session Acts, p. 615, the county seat for jurisdictional purposes was made a part of each magisterial district. It is further provided that process should be returnable to the county seat or to some other designated place, "whichever shall be nearer or more accessible to such defendant or defendants."

Certainly this judgment, so far as territorial jurisdiction is concerned, is not void. The county seat is made for jurisdictional purposes a part of every magisterial district, and the justice cannot know where all litigants live. It is also plain that upon timely request by the defendant the place of trial may be shifted to suit his convenience. But he should not wait until the day of trial has actually come and until the plaintiff has appeared with his witnesses there and ready for a hearing.

In this case there was a motion to quash execution. There was also filed a bill in chancery, whose purpose was to restrain Edwards from attempting to collect his judgment. Nowhere in either of these attempts is there any complaint about the place of trial. Petitioner is limited to the matters presented to the trial judge. Nor is there any error assigned in the petition here although complaint is made in argument.

If this judgment be not void, we are limited to matters relied upon in the court below and so hold.

█ A justice of the peace has only such power as is conferred upon him by statute. *Wall* v. *American Bank, etc., Co.,* 159 Va. 871, 167 S. E. 425.

█ Among powers conferred upon trial justices are those formerly exercised by justices of the peace. Code, section 4987f. *Dotson* v. *Dickenson,* 169 Va. 50, 192 S. E. 700.

█ Trial justices have proven to be immensely valuable in our judicial system, and the powers conferred upon them are to be liberally construed and are not to be construed away in fine-spun distinctions.

It is contended that the statute gives to trial justices no power to hear cases involving slander and insulting words but that "injury to the person" means something physical. The statute reads:

"(3) The trial justice shall have, within the limits of the territory for which he is appointed, exclusive original jurisdiction of any claim to specific personal property or to any debt, fine, or other money, or to damages for breach of contract or for any injury done to property, real and personal, or for any injury to the person, which would be recoverable by action at law or suit in equity, when the amount of such claim does not exceed the sum of two hundred dollars, and concurrent jurisdiction with the circuit court of the county or the city court or courts of general jurisdiction, as the case may be, of any such claim when the amount thereof exceeds two hundred dollars but does not exceed one thousand dollars; * * * " Session Acts, 1938, p. 153.

It will be noted that jurisdiction is given for any injury done to the person which would be recoverable by action at law or suit in equity.

This matter was considered in *Thompson* v. *Judy*, 95 C. C. A. 51, 169 F. 553, where the court said:

"But the appellant raises another question, which is whether a willful and malicious libel is an injury 'to the person or property of another,' and argues that by this language is meant a physical injury to his person, and not merely an injury to a right which the law attaches to the person. The question is therefore one of construction. It is true that in modern parlance the words 'personal injury' are often used to designate a physical injury to the party. But usually, when there is any attempt to put the matter into legal phraseology, these and equivalent words are understood to import the meaning in which they have long been used by recognized authorities, whether in legal text-books and commentaries or precise definition by courts, in classifying the rights of individuals. In 1 Blackstone's Com., 129 et seq., the author classifies and distinguishes those rights which are annexed to the person, *jura personarum*, and acquired rights in external objects, *jura rerum*; and in the former he includes personal security, which consists 'in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation.' And he makes the corresponding classification of remedies. The idea expressed is that a man's reputation is a part of himself, as his body and his limbs are, that detraction of it is an injury to his personality, and Chancellor Kent in his twenty-fourth lecture shows that the same classification of rights was expressed in our colonial legislation and has always been observed, and on page 16 of the second volume of his Commentaries, he says:

" 'As a part of the rights of personal security, the preservation of every person's good name from the vile arts of detraction is justly included. The laws of the ancients, no less than those of modern nations, made private reputation one of the objects of their protection.' "

The inherent rights of security in the person are not confined to security from violence done to the body. *Tinker* v. *Colwell*, 193 U. S. 473, 24 S. Ct. 505, 48 L. Ed. 754.

In point also is *McKenzie* v. *Doran*, 39 Mont. 593, 140 P. 677, and Cooley on Torts, 2d Ed., p. 24.

Mr. Minor puts the right to reputation as among those absolute personal rights equal in dignity and importance to security from violence. 4 Minor's Inst., 2d, Pt. 1, p. 3-8.

These authorities go back to Blackstone. See Jones' Ed., sections 173 and 174, where it is said that these primary rights "may be reduced to three principal or primary articles; the right of personal security, the right of personal liberty, and the right of private property; because as there is no other known method of compulsion, or of abridging man's natural free will, but by an infringement or diminution of one or other of these important rights, the preservation of these, inviolate, may justly be said to include the preservation of our civil immunities in their largest and most extensive sense." Section 173.

"Section 174. (i) Personal security.—The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation."

See also *Williams* v. *Williams*, 20 Colo. 51, 37 P. 614; *Morton* v. *Western Union Tel. Co.*, 130 N. C. 299, 41 S. E. 484; *McDonald* v. *Brown*, 23 R. I. 546, 51 A. 213, 58 L. R. A. 768, 91 Am. St. Rep. 659; *Houston Printing Co.* v. *Dement*, 18 Tex. Civ. App. 30 (citing 3rd Bl. Comm., p. 118), 44 S. W. 558; *Dohring* v. *Kansas City*, 228 Mo. App. 519, 71 S. W. (2d) 170; *Marcantonio* v. *Beacon*, 158 Misc. 851, 288 N. Y. S. 455.

██ It is true that injury to the person is at times limited to something physical, particularly insurance policies, but the weight of authorities hold that injury to one's reputation is an injury to the person. That is to say, it is an injury to an absolute personal right.

One falsely charged as being afflicted with some disreputable disease or with being of ignoble origin may suffer

more than he would through loss of limb in some automobile accident. He might be shunned by decent people, and his election to any post of honor or profit might be made impossible.

Our problem and its answers drifts down to this: One's right to an unimpaired limb and to an unimpaired reputation are, in each instance, absolute and has been since common law governed England. Indeed, an impaired reputation is at times more disastrous than a broken leg. Any violation of these inherent and common rights is an injury to the person for which compensation will lie, either at law or in equity. The statutes so provide.

The decree appealed from is right and should be affirmed.

*Affirmed.*