## CIRCUIT COURT OF STAFFORD COUNTY

George Smith,
Vivian Smith, et al.

     v.

Betty Dameron et al.

September 16, 1987

Case No. (Law) 10998

By JUDGE WILLIAM H. LEDBETTER, JR.

Sometime in early October of 1985, Stephen Smith, a Stafford High School student, was murdered. George and Vivian Smith, residents of Stafford County, are his parents.

Soon after Stephen's body was found, a reporter for a local newspaper interviewed one of Stephen's teachers. Statements made by the teacher (Dameron) to the reporter (Carrillo) were published in the newspaper (*The Free Lance-Star*) on October 16, 1985.

The gist of the article is Dameron's lamentation that neither she nor Stephen's classmates did enough to assist him in coping with teenage problems. "I wished I would've plopped him in my car and said you're going with me," she is quoted. In addition, the article quotes Dameron as saying that Stephen "had been on drugs really hard for the past couple of years"; that he was "constantly talking without making sense"; that "he smelled like a brewery more than once"; that he was "tough and aggressive

and drugs intensified that"; and that he "blamed himself for his parents' marital problems."

Stephen's parents, in Stephen's name,[1] as administrators of his estate, and in their individual capacities, filed this action against Dameron, Carrillo and *The Free Lance-Star*. The motion for judgment contains six counts, each of which asserts a different basis of liability, all alleging damages arising from the publication of the article. The newspaper article is attached as an exhibit to the motion for judgment and thus is a part of that pleading.

The defendants have filed demurrers and briefs in support of the demurrers. The plaintiffs have moved to strike the demurrers and have filed a brief in opposition.

The court heard arguments on the demurrers on September 10, 1987. At the conclusion of that hearing, the court sustained the demurrers as to all claims of the estate of Stephen Smith, as to Count V ("Action for Insulting Words"), and as to Count VI ("Invasion of Privacy"). The rationales of those rulings are reiterated in this opinion. All other aspects of the demurrers were taken under advisement. This opinion contains the court's decisions regarding those matters.

I. *The Causes of Action Brought on Behalf of Stephen Smith and the Estate of Stephen Smith*

Neither the estate of a deceased person nor his relatives can maintain a cause of action for defamation based upon statements concerning the decedent made after his death. Although there are no Virginia cases, the rule is supported by the great weight of authority and various treatises.

> One who publishes defamatory matter concerning
> a deceased person is not liable either to the

---

[1] Although Stephen Smith is named as a plaintiff, it is axiomatic that a dead person cannot sue. Some living person must bring the action for him in proper form. Thus, references to Stephen Smith shall be deemed to include the estate of the decedent and the administrator of the estate.

estate of the person or to his descendants
or relatives. *Restatement of Torts* (2nd) § 560.

The plaintiffs acknowledge the general rule but
they ask the court to "move beyond the antiquated formalism
[of the rule]." Given the nature and history of the tort
of defamation and its offshoots, and the logic of the
authorities in support of the rule, the court declines
to do so.

The tort of defamation protects a person's interest
in his good name, reputation, and standing in the communi-
ty. An individual, it is said, has a basic right to personal
security that includes his uninterrupted entitlement to
enjoyment of his reputation. *See Fuller v. Edwards*, 180
Va. 191 (1942). The right is especially personal to the
person defamed. It never has been designed to safeguard
the memory of a deceased person against remarks made sub-
sequent to his death which might conflict with the manner
in which the decedent's family and friends wish him to
be remembered.

Two cases illustrate the point.

In *Casamasina v. Worcester Telegram & Gazette*, 307
N.E.2d 865 (Mass. App. 1974), the father of a deceased
daughter brought an action for defamation in his own
behalf and as administrator of his daughter's estate,
on account of a newspaper article which quoted the medical
examiner as saying that the girl "had a long history of
involvement with drugs." Sustaining demurrers, the court
held: "One who defames the memory of the dead is not liable
civilly to the estate of the decedent or his relatives."

Similarly, in *Gilliken v. Bell*, 118 S.E.2d 609 (N.C.
1961), no cause of action was found to exist "for defamation
of a dead person." The court pointed out that the legisla-
ture, if it wished, could modify the common law and permit
such an action, designating the person who may sue and
how the sums recovered would be distributed.

The plaintiffs argue in the alternative that Virginia
Code § 8.01-25 recognizes that one's interest in reputation
survives death. Reference to Virginia's survival statute
is inapposite. This is not a survival case. The allegedly
defamatory statements were not made until after Stephen's
death. Thus, at the time of Stephen's death no cause of
action existed to which the survival statute would apply.

Therefore, the demurrers will be sustained as to all claims in the motion for judgment brought by or on behalf of the decedent and his estate.

## II. *Action for Insulting Words*

Virginia Code § 8.01-45 creates a cause of action for insulting words. The action lies if the plaintiff is damaged by statements that would be regarded by people in the community as insulting and that would tend to cause violence or breach of the peace. The original purpose of the statute was to prevent violence (duelling). Now, however, the action has been assimilated to the common law action for defamation. *Carwile v. Richmond Newspapers,* 196 Va. 1 (1954).

There are some distinctions, however, between actionable insulting words and actionable defamation. One of those distinctions is that, unlike defamation, insulting words must tend to cause violence or breach of the peace.

Although the plaintiffs allege in the text of their motion for judgment that the defendants' statements were "insulting" and "tended to a breach of the peace," it is obvious from a reading of the words which they rely upon (attached to the motion for judgment as an exhibit and consequently made a part of that pleading) that such is not the case. The statements were made during the course of an interview and published as a news article the next day. Reasonable people could not conclude that the comments relied upon, no matter how untimely or insensitive they may have been, would cause violence or a breach of the peace. The word "insult" is derived from the Latin *insultus* and *insultum,* which in turn are derived from *in* and *salio,* meaning "to leap." In elementary terms, an insult is a gross affront which figuratively "leaps on" the other person.

As a matter of law, the statements made by the defendants do not constitute "insulting words" and are not actionable under § 8.01-45. Accordingly, the demurrers will be sustained as to Count V of the motion for judgment.

### III. *Invasion of Privacy*

The Virginia Supreme Court has recognized no common law cause of action for invasion of privacy. Federal courts that have addressed the question have found no such right of action under Virginia law. *See e.g., Brown v. American Broadcasting Company,* 704 F.2d 1296 (4th Cir. 1983); *Falwell v. Penthouse International,* 521 F. Supp. 1204 (W.D. Va. 1981); *Ward v. Connor,* 495 F. Supp. 434 (E.D. Va. 1980).

The Virginia General Assembly has created a privacy action available only to one whose name or likeness has been appropriated for commercial purposes. Virginia Code Section 8.01-40. The plaintiffs concede that the statute is not applicable in this case.

This court declines to fashion a new non-statutory remedy for interferences with the right of privacy.

Parenthetically, even if the judiciary of the Commonwealth should choose to recognize an action for invasion of privacy beyond that authorized by statute, such an action would not be available under the facts of this case. Undoubtedly, such an action would apply only to circumstances far more outrageous and intrusive than those disclosed by these pleadings.

Accordingly, the demurrers will be sustained as to Count VI of the motion for judgment.

### IV. *Emotional Distress*

Count III asserts a cause of action based on intentional infliction of emotional distress, and Count IV asserts a cause of action based on negligent infliction of emotional distress.

Virginia law permits recovery for emotional distress and mental anguish under certain circumstances depending on whether the distress was accompanied by physical injury and whether the defendant's conduct involved actual physical contact. *See Moore v. Jefferson Hospital, Inc.,* 208 Va. 438 (1967); *Hughes v. Moore,* 214 Va. 27 (1973); and *Womack v. Eldridge,* 215 Va. 338 (1974).

What is the "conduct" to which the plaintiffs refer as having caused them emotional distress? It is plain from the pleading that the statements themselves constitute

the "conduct" referred to by the plaintiffs. These same statements also constitute the alleged defamation which is the gravamen of this action.

As long as words are nothing more than images in the mind, they are not actionable. When they are expressed, they may form the basis of an action for defamation. If the words cause damage to someone's reputation, recovery may be permitted. Among the items of damage which may be recovered is emotional distress. It follows that a separate action for infliction of emotional distress which is premised solely on allegedly slanderous or libelous words themselves, is not only superfluous but impermissibly duplicative.

The fallacy of the plaintiffs' position is best illustrated as follows. As explained below, the plaintiff in a defamation case must often prove *New York Times* actual malice in order to recover damages. These federal standards have been incorporated into state law. *See The Gazette, Inc. v. Harris*, 229 Va. 1 (1985). If the plaintiff were allowed to use the fact of the utterance of allegedly defamatory words as a basis for an action labelled "infliction of emotional distress" rather than "defamation," the strictures of modern defamation law could be circumvented. Relying solely on a claim which sounds in defamation, but calling it something else, the plaintiff could find himself the recipient of a recovery otherwise prohibited under state and federal law. Neither the substantive nor procedural laws of the Commonwealth can be manipulated to accomplish such a result.

Since the "conduct" relied upon by the plaintiffs in their Count III and Count IV assertions is nothing more or less than the same allegedly defamatory statements which are the basis of their defamation claim, the assertions cannot give rise to a separate and distinct cause of action of infliction of emotional distress under the circumstances of this case. The demurrers to Count II and Count IV of the motion for judgment will be sustained.

V. *Defamation of George and Vivian Smith*

In Count II, George and Vivian Smith do not seek recovery for the decedent or his estate, nor do they claim a derivative right as parents of Stephen Smith. In-

stead, they contend that they, too, were the victims of defamation, in other words, that the defendants' statements reflected upon, and directly defamed, them.

First, the defendants argue that the statements do not refer to George and Vivian Smith. There is no need to cite authority for the well-recognized proposition that a plaintiff in a defamation case is not required to show that he was mentioned by name in the publication. Furthermore, the article does refer to Stephen Smith's parents once, when Dameron is quoted as saying that Stephen "blamed himself for his parents' marital problems and wanted them to reunite."

Next, the defendants argue that even if the article makes reference to the parents, expressly or impliedly, there is nothing in it that reasonable persons could find libelous. In truth, upon a reading of the article as a whole, it is difficult to imagine how the statements, even if false, could be the source of damage to the reputation of the parents of the young man about whom they were spoken. But a trial judge's analysis of the weaknesses of a plaintiff's case is irrelevant, at least at this stage of the proceeding, and cannot serve as the basis for sustaining a demurrer. In the pleadings, George and Vivian Smith have stated a cause of action, recognized under Virginia law, and the court cannot conclude at this point, as a matter of law, that the statement relied upon by them are not libelous in any way.

Accordingly, the demurrer to Count II of the motion for judgment will be overruled.

## VI. *Related Matters*

Since *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), first injected the protections of the first amendment into state defamation law, that area of the law of torts has been frustratingly uncertain and fluid. In recent years, however, the picture has sharpened. The Virginia Supreme Court has articulated principles which are designed to strike a comprehensible balance between the competing constitutional and common law interests. Thus, the trial of this case, which is limited by today's rulings to the defamation action brought by George and Vivian Smith, will be governed by the principles enunciated in *The*

*Gazette, Inc. v. Harris, supra; Great Coastal Express, Inc. v. Ellington,* 230 Va. 142 (1985); and *Chaves v. Johnson,* 230 Va. 112 (1985). As they appear at this stage to be applicable to the case at bar, those principles can be summarized as follows:

1. As private plaintiffs, George and Vivian Smith must prove negligence to recover compensatory damages. In order to carry this burden, they must establish that the statements were false, and that the defendants either knew them to be false, or believing them to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based. Truth is not an affirmative defense; instead, the plaintiffs must prove falsity.

2. Before the negligence standard applies, however, the trial judge must decide as a matter of law whether the allegedly defamatory statements make substantial damage to reputation apparent. If the statements do not make substantial damage to reputation apparent, *New York Times* actual malice supplants negligence as the requisite standard of proof for recovery of compensatory damages.

3. If the published words are determined by the trial judge to involve no matters of public concern, and to be actionable *per se* at common law, compensatory damages for injury to reputation, humiliation and embarrassment are presumed. If the published words involve matters of general or public concern, damages are not presumed absent a showing of *New York Times* actual malice. If the published words are not actionable *per se* at common law, damages are not presumed absent a showing of *New York Times* actual malice.

4. To recover punitive damages, the plaintiffs must prove *New York Times* actual malice.

5. Pure expressions of opinion do not form the basis for a defamation action. Whether a statement is an expression of pure opinion or a statement of fact is a matter of law for the trial court to decide.

6. Qualified privileges still apply. Where a qualified privilege exists, there can be no recovery unless the plaintiff proves common law malice.

## VII. *Conclusion*

The demurrers are sustained in all respects, except as to the action for defamation brought by George and Vivian Smith, individually, set forth in Count II of the motion for judgment.